UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

ACCESS 4 ALL, INC. a Florida not for profit corporation, and PETER SPALLUTO, Individually,

    Plaintiffs,

vs.

BUCKMINSTER HOTEL CORPORATION, a Delaware Corporation, and BOSTON KENMORE CONDOMINIUM TRUST, a Trust created under Declaration of Trust dated December 26, 1986, as amended,

    Defendant.

                                            /

Case No.1:04-CV-12237-JLT

Judge Joseph L. Tauro
Magistrate Judge Alexander

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS BUCKMINSTER HOTEL CORPORATION AND BOSTON KENMORE CONDOMINIUM TRUSTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANTS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

Plaintiffs, ACCESS 4 ALL, INC., a Florida not-for-profit corporation, and PETER SPALLUTO, Individually, pursuant to the provisions of Rule 7.1 (b)(2) of the Local Rules of the United States District Court for the District of Massachusetts file the following Memorandum of Law in Opposition to the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

Plaintiff Spalluto is a quadriplegic and disabled person as defined by the Americans with Disabilities Act (ADA). Access 4 All, Inc. is a disability advocacy group to which Spalluto belongs and which includes amongst its members disabled individuals representing a cross section of those disabled individuals protected under the ADA. On a visit to Defendants' property, Spalluto encountered many barriers to access depriving him of his right and enjoyment of the Defendants' property, the Boston

1

Hotel Buckminster. These barriers also endangered his safety. The Plaintiffs seek injunctive relief against the Defendants as provided for under Title III of the ADA (42 U.S.C. 12181), preventing the Defendants from operating the property as a condominium hotel without complying with the mandates of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires the places of public accommodations and commercial facilities to be designed, constructed and altered in compliance with the accessibility standards established by 28 C.F.R. §36 (1994).

I.   **Standard of Review**

It is well-established law that a Complaint should not be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts entitling him to relief. Connelly v. Gibson, 355 U.S. 41, 45-46 (1957). All that is required is a "short and plain statement of the claim." Id p. 42. In ruling on a Motion to Dismiss, the Court must view the factual allegations in the Complaint in a light most favorable to the Plaintiff. Brown v. Crawford County, Ga., 960 F.2d 1002, 1010 (11th Cir. 1992) and Lessler v. Little, 857 F.2d 866, 867 (1st Cir. 1988), *cert. denied*, 489 U.S. 1016 (1989). Likewise, dismissal of a party is appropriate where it is clear that the Court has no set of facts that would conclusively support the party's allegations as asserted in the Complaint. H.J. Inc. v. Northwestern Bell TEL Co., 492 U.S. 229, 250 (1989).

Therefore, in a well-pleaded Complaint, the standard for dismissing a party is not whether the Court can determine if a party will prevail on the outcome, but based on factual allegations made, whether a party can sustain the lawsuit through the evidentiary phase. See F.R.C.P. 8(a); Access 4 All, Inc., v. TKM Global Investment, Inc., Case No. 6:02-CIV-1233-orl-Conway, 6-7 (M.D. Fla. Feb. 9, 2003) (denying motion to dismiss individual Plaintiff and organizational Plaintiff, for lack of standing because both met constitutional standards) and citing Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974). On the contrary, a Court should grant a Motion to Dismiss where a Plaintiff has not alleged facts sufficient to establish the elements of a legal issue that would provide relief. See Marshall County Bd. Of Educ. v. Marshall County Gas. Dist., 992 F.2d 1171 (11th Cir. 1993). When "lack of standing is raised in a Motion to Dismiss, the issue is properly resolved by reference to the allegations of the Complaint." See Church v. City of Huntsville, 30 F.3d. 1332, 1333 (11th Cir. 1994). The Complaint's "well pleaded facts" are accepted as true, but its legal conclusions are not. See Honduras Aircraft Registry, Ltd. vs. Government of Honduras, 119 F.3rd 1530, 1533 (11th Cir. 1997).

II.     **Plaintiffs Spalluto and Access 4 All, Inc. Have Established Standing**

As Defendants point out, parties seeking injunctive relief under Title III of the ADA must meet the irreducible, constitutional standing under Article III, Section 2 of the Constitution by showing that (1) they have suffered an injury-in-fact to a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; that (2) there is casual connection between the injury and the conduct complained of; and, that (3) the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A party must have standing at the time a lawsuit is filed. Friends of the Earth v. Laidlaw Envtl. Servs. (TSC), Inc., 528 U.S. 167, 190 through 191 (2000) and Robidoux v. Celani, 987 F.2d 931, 938 (2d Cir. 1993).

A.      **Plaintiff, PETER SPALLUTO, has pled sufficient facts in the Amended Complaint to establish injury in fact.**

Plaintiff Spalluto has pled sufficient facts to establish injury in fact. Accepting the Plaintiffs allegations as true, as required when considering a Motion to Dismiss (*See* Conway, *supra*), Defendants' assertion that Plaintiff Spalluto fails to allege any facts demonstrating the Plaintiff has

suffered any injury in fact is <u>unfounded</u>[1]. Plaintiffs allege at paragraph 12 of the Amended Complaint that Plaintiff Spalluto "qualifies as an individual with disabilities as defined by the ADA." Plaintiffs allege at paragraph 12 of the Amended Complaint that Spalluto visited the subject hotel, the Boston Hotel Buckminster, where he encountered architectural barriers which effectively denied and diminished Plaintiff Spalluto's ability to visit the property in violation of the ADA. Plaintiffs further allege at paragraphs 12 and 17 of the Amended Complaint that Spalluto desires to again visit the Boston Hotel Buckminster not only to avail himself of the goods and services available at the property, but to assure himself that this property is in compliance with the ADA. Lastly, Plaintiffs allege at paragraph 14 that they have a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA.

Plaintiff Spalluto's Amended Complaint should be read in the light most favorable to the Plaintiff. *See* <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22 (1969). The Court should accept Plaintiff Spalluto's allegations regarding his disability and injury as true. *See* <u>Hinshon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). Defendants' rely on <u>Fleming v. Lind-Waldock & Co.</u>, 922 F.2d 20,23 (1st Cir. 1990) to suggest that the Court need not take bald assertions or unsupportable conclusions in the light most favorable to Plaintiffs. The Plaintiffs in the case at bar make the required short, plain and supportable statements of their claims. In any event, <u>Fleming</u> is distinguishable. In <u>Fleming</u>, the Court held that the Plaintiff did not have standing because it failed to demonstrate a relationship between the Defendant corporation and the Plaintiff's financial accounts which were harmed. The Plaintiffs' Amended Compliant in the case at hand clearly alleges the relationship between the Plaintiff and Defendant, namely Plaintiff visited the Defendant property and was discriminated

---

[1] An alleged violation of the ADA is an injury sufficient to give rise to an Article III case or controversy. See *Parr v. L&L Drive In Restaurant*, 96 F. Supp 2d 1065 (D. Hawaii 2000) p 13.

4

against at that property. The Amended Complaint at paragraph 19 further alleges specific instances of discrimination including barriers to access to, for example, entrances and paths of travel, goods and services, restrooms, and guest rooms.

Defendant also claims that Plaintiff has not established a prima facie case of discrimination in their Amended Complaint because the Plaintiffs did not allege whether Defendants' premises are a new construction or whether they have been altered sufficiently to bring the structure within the ADA or ADAAG. While Defendant is correct that the Amended Complaint does not set out whether the Defendants' facility is new construction or altered, it is not necessary to do so. It is enough to allege that the Defendants' own, lease, lease to, or operate a place of public accommodation known as Boston Hotel Buckminster, as they do at paragraph 15, that the facility has ADA violations, as they allege at paragraph 19 of the Amended Complaint and that the facility is a place of public accommodation as defined under the ADA, which they allege at paragraph 15 and to which the Defendants admit in their Answer. The Defendants can make an affirmative defense in their Answer, rather than a Motion to Dismiss, to allege that the ADA or portions of it does not apply to them. As for the Defendants' assertion that the term "Defendant" is not always pluralized, Defendant is correct to point that out. This is a typographical mistake on Plaintiffs' part. However, because the Amended Complaint was intended primarily to add the Kenmore Condominium Trust as a Defendant, the Defendants and the Court should infer that the Plaintiffs are asserting that both Defendants either own, lease, lease to or operate the Boston Hotel Buckminster, and therefore both Defendants can be held liable under the ADA. The mistake should not rise to the level of alleging that Plaintiffs' have failed to state a claim and be the basis for dismissing the suit.

Accepting the Plaintiffs' allegations as true, as required when considering a Motion to Dismiss (*See* Conway, *supra*), the Plaintiffs have sufficiently alleged an injury in fact that can be redressed by a favorable decision in this case. The case of Frotton v. Barkin, 226 F. Supp 2d 92 (D.Mass 2002) cited by the Defendant does not compel a different result, nor does the case stand for the proposition that the Defendant has applied to it. In Frotton, the court was *not* addressing the sufficiency of the allegations of Plaintiffs complaint; rather it was determining whether there was sufficient proof offered to support standing to issue a preliminary injunction, which is a different standard. In any event, the court found in a later proceeding that the Plaintiff had standing to bring their claim. (See Docket Entry 104, Civil Action #2001-12124-RBC.) .

### B.   Plaintiff, PETER SPALLUTO, has pled sufficient facts in the Amended Complaint to establish likelihood of future harm.

Spalluto has suffered an injury in fact when he encountered architectural barriers at the Defendants' property when such barriers were in violation of the ADA. He has also sufficiently plead enough facts to establish the likelihood of future harm or injury. Plaintiffs allege at paragraph 17 of the Amended Complaint that Spalluto desires to again visit the Boston Hotel Buckminster not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA. At paragraph 14, Plaintiffs allege they have a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA. These allegations need to be taken as truth and are plausible.

Courts have sustained the standing of the Plaintiff to proceed with a claim under Title III of the ADA, and denied a Motion to Dismiss based on lack of standing on the same types of allegations contained in Plaintiffs Amended Complaint. In Advocates for the Disabled, Inc. and

<u>Martin Marcus, Plaintiffs v. Mariposa Resources Corporation</u>, Case No. 01-0134-civ-Lenard (S.D. Fla. June 19th, 2001), the Court stated on Page 3 and 4 of the Court's Order Denying Defendant's Motion to Dismiss:

> For an individual Plaintiff to establish standing, the Plaintiff must show: (1) It has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical (2) the injury is fairly traceable to the challenged action of the Defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." White's Place, Inc., 222 F.3d 1329 (quoting Friends of the Earth, Inc., 528 US 167, - 120 S. Ct. 693, 704), (2000). Plaintiff MARCUS alleges in the Complaint that he "has visited the property which forms the basis of the lawsuit and plans to return to the property to avail himself of the goods and services offered to the public at the property." Plaintiff, MARCUS, also alleges that the "architectural barriers" on the property have effectively denied or diminished (his) ability to visit the property and have endangered his safety. Barriers to access involving parking and paths of travel at this property have posed a risk of injury to the Plaintiff. Every other barrier to access as described in this Complaint causes similar risk of injury, embarrassment, or discomfort to the Plaintiff." The court finds that these allegations satisfy the requirements to establish Plaintiff, MARCUS' standing in this matter.

Other Courts have found standing for disabled plaintiffs who encounter barriers to access at places of public accommodation if they show a plausible intention or desire to return to the place. In <u>Disabled in Action of Metropolitan New York v. Trump</u>, 2003 WL 1751785 * 7 (S.D.N.Y. 2003), the court stated:

> Courts considering ADA claims have found that disabled plaintiffs who encounter barriers at restaurants, stores, hotels or stadiums prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access." See *Pickern v. Holiday Quality Foods Inc.* 293 F.3d 1133, 1138 (9th Cir. 2002) (Plaintiff had standing who encountered barriers at a grocery store and who stated he would shop there again if it where accessible); *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000) (to demonstrate standing plaintiffs must "at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers"); see also *D'Lil v. Stardust Vacation Club*, No. CIV-S-00-1496, 2001 WL 1825832, at *4 (E.D. Cal. Dec

21, 2001) (plaintiff had standing who alleged that she "would, could and will return to the [hotel]...when it is made accessible to persons with disabilities," she had a history of travel to the area, and she had particular reasons for seeking accommodation at the hotel); *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1364 (S.D.Fla. 2001) (plaintiff who testified that he would return to stadium, particularly if the alleged barriers were removed, had standing); *Access 123 v. Markey's Lobster Pool, Inc.*, No. CIV. 00-382-JD, 2001 WL 920051 at *3 (D.N.H. Aug. 8, 2001) (plaintiff had standing when he was aware of barriers in accessing restaurant from parking lot, barriers had not been removed when complaint was filed, and he stated he would return to [the restaurant] if the barriers were removed"); *Association for Disabled Americans v. Claypool Holdings*, No. IP00-0344-C-T/G, 2001 WL 1112109, at *20 (S.D.Ind. Aug. 6, 2001) (plaintiff had standing who "expressed a desire to stay overnight at the Embassy Suites on future visits to Indianapolis if the hotel were ADA compliant" and who presented evidence that he traveled to Indianapolis at least once a year); *Dudley v. Hannaford Bros. Co.*, 146 F.Supp.2d 82, 86 (D.Me.2001) (plaintiff had standing who alleged that Shop'n Save refused to sell him alcohol based on his disability and had not altered its policies, and who alleged that he often visited Shop'n Save stores and would like to purchase alcohol but had not attempted to do so based on his past experience); *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1080 (D.Haw.2000) (holding after bench trial that plaintiff had standing to bring claim against fast-food restaurant in part because the court was "satisfied that Plaintiff's intent to return [was] sincere"); *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I*, No. Civ.A. 86-WY-2490-AJ, et al., 1997 WL 33471623, at *6 (D.Colo. Aug. 5, 1997) (plaintiff has standing if he shows that "discrimination on the basis of disability has deprived him of the ability to gain access to the public accommodations and that a failure to redress the injury will continue to deprive him of access to those facilities in the future")."

In Assoc. for Disabled Americans Inc. and Michael H. Brennan v. Claypool Holdings, LLC, 2001 WL 1112109 (S.D.Ind. 2001), the District Court, in granting standing to the Plaintiff, a Miami resident and the ADA expert in the case, who "expressed a desire to stay overnight at the Embassy Suites on future visits to Indianapolis if the hotel were ADA compliant" explained that standing should be liberally construed taking into consideration the congressional intent in passing the ADA. It says:

> Moreover, the ADA was intended to "provide a clear and comprehensive

> national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C., §12101(b))1), and is a remedial statute, see *Steger*, 228 F. 3d at 894, *Rehling V.C. of Chicago*, 207 F. 3d 1009, 1016(7th Cir. 2000), as amended (April 4, 2000), which "should be broadly construed to effectuate its purposes." *Tcherepnin v. Knight*, 389 U.S. 332, 336(1967); see *Steger*, 228 F. 3d at 894. In light of the evidence of record and the purpose of the ADA, and in construing the statute broadly to effectuate its purposes, the court finds that Plaintiff have demonstrated Mr. Brennen's standing to sue under Title III of the ADA. (Section 21, Page 17)

Courts have held that a Plaintiff has standing to seek injunctive relief under the ADA if they can show continued or threatened violations of the statute. The Courts have held this sufficiently represents future harm. See Dudley v. Hannaford Bros. Co., 333 F.3d 299 (1CA 2003). As stated by Professor Adam A. Milani, Associate Professor, Mercer University School of Law, Wake Forest Law Review, Volume 39, April 5, 2004, Page 90, in his article entitled, Wheelchair Users Who Lack "Standing" Another Procedural Threshold Blocking Enforcement of Title II and III of the ADA:

> Several Courts have held that, even when there has been only a single past instance of discrimination, plaintiffs have shown the requisite standing to sue to remedy accessibility problems. These Courts have found that, if the barriers continue to exist, the plaintiffs have shown either a sufficient evidence of imminent future injury and/or actual or present injury because they are deterred from using the facility.
> 
> For example, in *Pickern v. Holiday Quality Foods Incorporated*, 293 F. 3d 1133 (9th Cir 2002), the Court found that ongoing accessibility problems at a store were sufficient to show both an imminent future injury and an actual and present injury. One of the four named plaintiffs in *Pickern*, Jerry Doran, was a paraplegic who used a wheelchair. He sued Holiday Quality Foods, Inc. ("Holiday") seeking the removal of architectural barriers that made it difficult for him to access one of its grocery stores. Doran had gone to the store twice. On the second visit, in late 1998, he waited in the parking lot while a companion went in to the store because of his prior experience with inadequate access to and from the parking lot, to the check stand, to the restroom, and to vending machines. Doran filed his complaint on March 1, 1999, and the district court held he did not have standing and his claim was time-barred because he had waited for over a year after he first discovered the store's barriers

before filing the complaint.

The Ninth Circuit reversed. On the timeliness issue, the court noted that the ADA provides for injunctive relief to "any person who *is being subjected to* discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person *is about to be subjected to* discrimination'" It said that the phrases, "is being subjected to" and "is about to be subjected to" showed that continuing or threatened violations of the statute were injuries for which a plaintiff could seek injunctive relief under the ADA. It also noted that the ADA does not require "a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization...does not intend to comply" with the statute. Under this language, the court held that a plaintiff has suffered an injury when he is aware of accessibility problems at a public accommodation and is obstructed from visiting that accommodation. Because Doran was currently aware of barriers to access at a Holiday store and those barriers deterred him from entering the store shortly before he filed suit, the court held his suit for injunctive relief was not time-barred.

In Dudley, *supra*, a person with a brain injury that gave him the outward appearance of being intoxicated challenged a store policy of never reconsidering a cashier's initial decision to refuse to sell alcohol to a customer, who had been to the store only once. Defendant argued that "a single incident of discrimination is insufficient to support a private right of action under Title III of the ADA". This argument did not challenge the district court's conclusion that Dudley had standing to pursue a Title III claim, but instead "attacked the court's closely related determination that the language of Section 12188(a)(1) is broad enough to provide a private right of action for an individual who suffered a single act of discrimination." As Professor Milani points out in his law review article, *supra* page 100, "the First Circuit rejected this argument, while it agreed that ADA Title III does not allow claims based on past discrimination that is unlikely to reoccur and therefore requires some ongoing harm, it disagreed with Hannaford's interpretation of the statutes "futile gesture" exception. Specifically, Hannaford "assert(ed) that Dudley, in order to establish an ongoing harm, must prove

that a subsequent effort on his part to purchase alcohol beverages at the ... store would have been 'a futile gesture'".

The court stated:

> The proposition that Hannaford advances, the disabled person must subject himself to repeated instances of discrimination in order to invoke the remedial framework of Title III of the ADA - turns the language of § 12188 (a)(1) on its head." The futile gesture provision is designed to protect the disabled plaintiff from having to shoulder an undue evidentiary burden.

Defendants' rely on City of Los Angeles v. Lyons, 461 U.S. 95, 101-105 (1983) stating that Plaintiffs must demonstrate an actual impending threat of harm in order to obtain injunctive relief. While this is a correct statement of law, the Plaintiff in that case could not show that being the victim of a police choke hold policy was enough of a continuing adverse effect. Plaintiff Spalluto can show a continuing adverse effect by being denied access to a place of public accommodation where he does want to go and thus, is easily distinguished. The court in Trump, supra on Page 8, provides a good explanation of how a person desiring to use a public accommodation is distinguishable from uncertain events such as being arrested or going to the hospital emergency room. It states:

> [T]he present case differs also from *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), where the Court held that a plaintiff who had been subjected to a choke hold by the Los Angeles police lacked standing to seek an injunction against the enforcement of a police choke hold policy. The Court said that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the choke holds by police officers," *id.* at 105, and the Court found that there was not a sufficient likelihood of future injury to support standing, *id.* The Court stated that "'[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Id.* at 102 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). However, the present case, as in *Laidlaw,* the alleged violation had the ongoing adverse effect of deterring the plaintiffs from visiting a place they would otherwise like to go."

11

> "Defendant relies on several cases where courts have considered suits by deaf plaintiffs against hospitals for failure to provide sign language interpreters in emergency rooms and found that they plaintiffs lacked standing to bring claims under Title III of the ADA because there was not sufficient likelihood that they would return to the hospital for emergency care and face the same problem again. See *Constance v. State Univ. of N.Y. Health Sci. Ctr.*, 166 F.Supp.2d 663, 667 (N.D.N.Y.2001); *Freydel v. N.Y. Hosp.*, No. 97 Civ. 7926, 2000 WL 10264, at *3 (S.D.N.Y. Jan.4, 2000); *Naiman v. N.Y Univ.*, No. 97 Civ. 6469, 1997 WL 249970, at *5 (S.D.N.Y. May 13, 1997); *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830, 833 (D.Md.1998); *Schroedel v. N.Y. Univ., Med.*, F.Supp 594. 599 (S.D.N.Y. 1995). Those cases are more closely analogous to *Lyons* than the present case. A person generally does not desire or intend to receive emergency room treatment, just as Lyons did not desire or intend to be arrested. In the present case, if Levine's and Zames' statement are credited, the alleged ADA violation injures them by deterring them from going to a place they would like to visit. Deaf persons could be injured again by emergency room personnel only if they had to return to the hospital for emergency treatment – an uncertain event. Likewise, Lyons could be injured again by the police only if he was arrested again, also an uncertain event. In those cases, unlike in the present case there is not plausible ongoing injury.

Additionally, Courts have granted standing to Plaintiffs with dual motivations to return to a place of public accommodation, even when one motivation was to determine if the place of public accommodation has been brought into ADA compliance. See <u>Molski v. Price</u>, 224 F.R.D. 479 (C.D. CA 2004), where the Court held that Plaintiff met his burden to establish his intent to return to Defendant's place of business holding that the Plaintiff's motivation, but not his intent, is irrelevant to determining standing. The Court relied on <u>Clark v. McDonald's Corporation</u> 213 F.R.D. 198 (D.N.J.2003) where the court said that a Plaintiff who had the dual motivation of availing himself of the goods and services of the restaurant as well as verifying the restaurant's ADA compliance made plaintiff a "bona fide" patron and gave him standing. The Court also relied on <u>Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership</u>, No. 96-WY-2490-AJ, 1997 WL

33471623 (D.Colo.1997) where the Court held that Plaintiff's motivation, but not his intent, is irrelevant for purposes of determining standing. Plaintiff said his intention to shop at Defendant's stores was driven by a desire to see if the stores were in compliance with the ADA. The Court in Hermanson held the plaintiff has standing if he shows that "discrimination on the basis of disability has deprived him of the ability to gain access to the public accommodations and that a failure to redress the injury will continue to deprive him of access to those facilities in the future."

Similarly, Spalluto has stated his plans to return to the hotel for personal reasons as well as with the intent of checking up on its' ADA compliance. The Plaintiff should be considered a "bona fide" patron.

In Claypool, *supra* the court granted standing to the Plaintiff who was also the ADA expert. In that case, Plaintiff claimed that he intended to visit the facility in the future while performing expert services and to see his family. The Defendants argued that Plaintiff had no plans to visit the Embassy Suites in the immediate future outside his activities associated with the legal action; inspecting the hotel as an expert on behalf of the plaintiff. The Court, held that in construing the statute broadly to effectuate its purposes, the Plaintiff had standing to sue under Title III of the ADA.

    C.    **Plaintiff ACCESS 4 ALL, has pled sufficient facts in the Amended Complaint, to Establish Standing.**

The Defendant argues that Access 4 All, Inc., the non profit advocacy group which Plaintiff Spalluto is a member, lacks standing to bring the subject claim because Spalluto lacks standing and because the group has failed to show direct injury. Plaintiff, Access 4 All relies solely on its right to bring this claim based on associational standing in accordance with the law of association standing as announced in the case of Hunt v. Washington State Apple Adver. Comm'n, 433 US 433, 343 (1977).

In Hunt, the Court held that: "An organization seeking injunctive relief for enforcement of protective legislation has standing if (1) its members or otherwise have standing to sue in their own right; (2) the interest it seeks to enforce is germane to the organizations purpose; (3) is the claim asserted nor the relief requested requires the participation of the individual members of the lawsuit."

The United States Supreme Court also held that only the first two prongs of the Hunt test are constitutional requirements and that the third requirement that neither the claim asserted nor the relief requested requires participation of individual members (of the Association) in the lawsuit is prudential as a matter of "administrative convenience and efficiency" and therefore distinct from the case and controversy requirement of Article III. United Food & Commercial Workers Local 751 v. Brown Group, Inc., 517 U.S. 544 (1996).

In Hunt, the Court explained that to have standing, "the association must allege that its members, or any one of them, are suffering immediate or threaten injury as a result of the challenged action of the sort that would make a justiciable case had the members themselves brought suit." Hunt, 432 US at 342. The Court further reasoned that if in a proper case the association seeks a declaration, injunction or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Id at 343. "The organization provides the means by which (the organizational members) express their collective views and protect their collective interests." Id at 345. Therefore, an organization has standing when its members sustained a "direct and sufficient" injury, the organization is devoted to representing its members interest, and the members are not needed individually for just adjudication. Id at 373-344.

In the subject case, Plaintiffs' seek prospective relief and the rule in Hunt, is therefore

14

applicable. Plaintiffs seek relief from the Defendant in the form of modifications to the Defendants property. No award of damages is sought. The first two prongs of the <u>Hunt</u> test are met. The Plaintiff, Spalluto has standing to sue on his own behalf; he suffered an injury in fact when he encountered architectural barriers on the Defendants property. Further, Spalluto has expressed his intent to return to the subject property for personal reasons once the property is accessible. Clearly, the interest Plaintiff Access 4 All seeks to enforce is germane to the organizational purpose. Plaintiff, Access 4 All has alleged at paragraph 11 that the purpose of the organization is to represent the interest of its members by assuring that places of public accommodations are accessible to and useable by the disabled and that it's members are not discriminated against because of their disabilities.

As to the third prong of the Hunt test, the prudential considerations in allowing Access 4 All, to remain a part of this suit, Access is a membership organization seeking to further the interests and objective of its members in preventing and remedying discrimination on the basis of disability. The doctrine of associational standing recognizes that the principal reason people join an organization is often to create an effective vehicle for vindicating interest that they share with others. See <u>International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock</u>, 477 US 274 (1986). There can, indeed be strength in numbers, and many together can often do what one alone cannot. Furthermore, as stated by the United States Supreme Court in <u>Warth v. Seldin</u>, 422 US 490, 498 (1975), "if in a proper case the association seeks a declaration, injunction or some other form of prospective relief, you can reasonably suppose that the remedy, if granted, will inure to the benefit of the association members actually injured". The barriers that allegedly impeded Plaintiff Spalluto's access affect all persons with similar disabilities and Access seeks to further the organizational objective by joining its

members to Spalluto's challenge to the alleged barriers.

In American Disability Association, Inc. v. DI-MI Investment Corp., Case No. 01-6300-CIV-Dimitrouleas (SD Florida 2001), the Court explained its basis for recognizing organizational standing in a Title III ADA case:

> The court concludes that the Plaintiff meets the test for associational standing. First, the Plaintiff's members and officers with disabilities, including, Raymond Cessna, do otherwise have standing to sue the Defendant in their own right. Second, Plaintiffs interest and attempt to ensure that the Shopping Center is accessible to those individuals with disabilities and remedy these injuries is central, to the Plaintiff's purpose, "to represent its members", interest by assuring that places of public accommodation are accessible, to, and usable by, the disabled, and that its members and other handicapped persons are not discriminated against because of their disabilities. Finally, neither the claim asserted, the violations of the ADA, nor the relief requested (permanent injunction requiring the Defendant to make the facilities at the Shopping Center readily accessible to and usable by individuals with disabilities, to the extent required by the ADA), requires the participation of individual members in the lawsuit. No individual assessment of Plaintiff's members must be made to determine what measures the Defendant must take in order to comply with the ADA. The claim asserted and relief requested can be properly resolved in a group context. See *Hunt*, 432 US at 344, 97 S. Ct. at 2442. Thus, all three (3) prongs of the *Hunt* test are satisfied. S. Ct. at 2442. Thus, all three (3) prongs of the *Hunt* test are satisfied.[2]

---

[2] For other cases, recognizing the standing of a disability organization in a Title III ADA claim, see Disabled Patriots of America, Inc. v. Lane Toledo, Order Denying Motion to Dismiss in part Case No. 3:04cv7137 (W.Div. Ohio 2004), Access for the Disabled, Inc. v. Publix Supermarket, Order Denying Motion for Summary Judgment, Case No. 01-6738-civ-Hooeler (S.D. Fla. 2003); Access for the Disabled v. Caplan, Order Denying Summary Judgment, Case No. 01-7310-civ-Jordon (S.D. Fla. 2002)

Another case where the court explained the basis for group standing in an ADA context is Access for the Disabled, Inc, and John Garon v. Publix Supermarkets, Inc. Case No. 01-6738-CIV-HOEVELER/BANDSTRA (SD Fla. 2003), wherein on page 9 the Court states as follows:

> Defendant next argues that Access for the Disabled fails the third prong of *Hunt* because an ADA lawsuit, by its very nature, requires participation of the individual aggrieved members. Defendant cites two cases from this district which have reached that conclusion. See *Association for the Disabled, Inc. v. Concorde Gaming*, 158 F. Supp. 2d 1353, 1363-64 (S.D. Fla. 2001); *Concerned Parents to Save Dreher Park City v. City of West Palm Beach*, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994).
>
> This Court finds the contrary position more persuasive. The Supreme Court has held that the third prong of Hunt is merely a prudential concern, which focuses on "matters of administrative convenience and efficiency, not on elements of a case and controversy within the meaning of the Constitution." *United Food and Commercial Workers Union v. Brown Group, Inc.* 517 U.S. 544, 557 (1996). The Eleventh Circuit has adopted this holding in the ADA context. *See Doe v. Stincer*, 175 F. 3d 879, 882-83 (11th Cir. 1999). Relying on this reasoning, other courts in this district have found that an associational plaintiff such as Access for the Disabled does have standing in this situation, although none in published decisions.
>
> The Hunt decision allows group standing, when the organization satisfies the conditions established by the Supreme Court. The barriers that allegedly impeded Spalluto's access affect all persons with similar disabilities and Access 4 All seeks to further the organizational objective by joining its members to Spalluto's challenge to the alleged barriers. Furthermore, the organizational plaintiff is in a better position to continue these proceedings past the individual plaintiff's lifetime, and ensure enforcement of the Defendant's compliance with the ADA post judgment.

There are a plethora of cases where courts have recognized the joint standing of organizations and individuals to sue for the same disability claim, *See* Leary, et al and Phoenix Unlimited, an Unincorporated Association v. Crapsey, 566 F.2d 863 (2d. Cir. 1977), Paralyzed

Veterans of America v D.C. Arena, 117 F.3d579( DC Cir. 1997), Greater Los Angeles Council on Deafness, Inc. and Barbara Sheridan, et al v. Zolin, 812 F.2d 1103 (9th Cir. 1987), Gregory and Access Now, Inc. v. the Melrose Group, LLC d/b/a Hotel St. Helene 2003 WL 22928805 (Ed. La. 2003), United Handicapped Federation v Andre, 558 F.2d 413 (8 Cir. 1977); NAACP et al v. the Medical Center, Inc. 599 F.2d 1247 (3 Cir. 1979), Action Alliance of Senior Citizens of Greater Phil. V. Snider, 1994 WL 384990 (ED. Pa. 1994); Williams v. USA, 704 F.2d 1162 (9th Cir. 1983).

Although Plaintiffs recognize that there is a body of case law holding that a Plaintiff is limited to seeking relief for those disabilities that effect him or her, some courts have held the disability association should have standing to bring suit on behalf of the disability of all its members, once one or more of its members has standing to pursue the claim. Access 4 All, Inc. v TKM Global Investment, Inc., Case No. 6.02-CIV-1233-ORC-Conway, MD Fla. (2003), Independent Living Resources, *supra* Plaintiff's argue that this rational is correct, as the ADA does not require that a Defendant redesign its facilities to fit the specific needs of an individual plaintiff, but rather and most prudentially, the public accommodation remove the barriers and install the architectural designs that are established by the ADA and Code of Federal Regulations. See 42 USC 12181 et seq., 28 C.F.R., Part 36, 42 USCA § 12188(a)(2) provides

> in the case of violations of § 12182(b)(2) (A)(IV), and § 12183(a), of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible too and usable by individuals with disabilities to the extent required by this subchapter.

In fact, a leading expert in universal design and the ADA guidelines, James Evan Terry, recently stated that "design standards like those adopted under the ADA are minimum

standards... The ADA does not mandate a gradual slope to an entrance used by all. An ADA-compliant ramp can be so long and steep that over two-thirds of people in wheelchairs cannot use it." James Evan Terry, *Preface, Universal Design and the New ADA/ABA Guidelines*, Harvard Design School Office of Executive Education, August 4-6, 2003 (*See* copy at Exhibit A).

It stands to reason that ADA compliance means "total" compliance that would benefit a group of disabled persons and not one particular individual. The Court in <u>Independent Living Resources</u>, *supra*, sates that the plaintiffs effectively are prosecuting the action as representatives of class of persons with disabilities, so that all of these conditions may be addressed in a single action. The Court continues on page 61, "there is standing, however, if the plaintiff is the class of persons with disabilities or, in this case, the plaintiff organization as their de facto representative."

WHEREFORE, for the above reasons, the Plaintiffs have standing and request the Court to deny Defendant's Motion to Dismiss.

Respectfully Submitted,

FULLER, FULLER AND ASSOC., P.A.
Attorney for Plaintiffs
12000 Biscayne Blvd., Suite 609
North Miami, FL 33181
(305) 891-5199 - Dade (954) 463-6570 - Broward
(305) 893-9505 - Fax

By: _____
O. Oliver Wragg, Esquire  Bar Number: 643152
Of Counsel
Date: 4/6/05